IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

QUAN LEWAYNE DAVIS                      :

                                    :

                                    :

   v.                               : Civil Action No. DKC 2005-3080

                                    :

PRINCE GEORGES COUNTY, ET AL.           :

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of
Defendants Prince George's County, Maryland (the "County"), and
Ismael Canales to dismiss Counts II, III, and V of Plaintiff Quan
LeWayne Davis's complaint.  (Paper 6).  The issues have been
briefed fully and the court now rules pursuant to Local Rule 105.6,
no hearing being deemed necessary.  For the reasons that follow,
Defendants' motion will be granted, albeit in part without
prejudice to amendment.

**I.  Background**

The following facts are undisputed.  On November 10, 2002,
Brandon Malstrom was murdered near the University of Maryland
campus.  Defendant Canales was the lead detective on the case for
the Prince George's County Police Department.[1]  After two days of
investigation, Plaintiff was arrested on November 12, 2002, by the
Prince George's County Police Department, and charged with the
murder of Malstrom.  Plaintiff was indicted on January 30, 2003,

---

[1] Police from the University of Maryland also were involved in
the investigation of Malstrom's murder.

and from June 23, 2003, to June 27, 2003, was tried on charges of first and second degree murder, first and second degree assault, rioting, and openly carrying a dangerous weapon.  On June 27, 2003, Plaintiff was found not guilty of first and second degree murder, and first and second degree assault.  Plaintiff's complaint indicates he was found not guilty of openly carrying a dangerous weapon (paper 1), however, his opposition to Defendant's motion states that he was convicted of riot and openly carrying a dangerous weapon.  (Paper 7).

Plaintiff filed a complaint in this court on November 14, 2005.  Plaintiff alleges the following: Count I, violations Plaintiff's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983; Count II, false arrest; Count III, false imprisonment; Count IV, malicious prosecution; and Count V, intentional infliction of emotional distress ("IIED").  Plaintiff seeks $15 million in damages, including $5 million in compensatory and $10 million in punitive damages.  (Paper 1).  On March 28, 2006, Defendants filed a motion to dismiss Counts II, III, and V. (Paper 6).

## III.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

3

### III.   Analysis

Defendants argue that Plaintiff failed to give notice of his claims of false arrest, false imprisonment, and IIED, pursuant to the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-304(a).  Defendants also note that Plaintiff was required to allege notice as a substantive element of his complaint.

Section 5-304(a) states, in relevant part: "[A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."  A plaintiff's injury occurs, "pursuant to § 5-304, when his causes of action arose, i.e. when the legally operative facts permitting the filing of his claims came into existence." *Heron v. Strader*, 361 Md. 258, 264 (2000).  In other words, "the 180-day clock [begins] to run at the moment that the plaintiff [is] able to bring [the] claim." *Id.* at 263.  Moreover, "the notice is a condition precedent to the right to maintain the suit, and compliance with the notice statute should be alleged in the declaration as a substantive element of the cause of action." *Hargrove v. Mayor of Balt.*, 146 Md.App. 457, 462-63 (2002) (quoting *Madore v. Balt. County*, 34 Md.App. 340, 345 (1976)); *see also Renn v. Board of Comm'rs of Charles County, Md.*, 352 F.Supp.2d 599, 602 (D.Md. 2005).

4

Plaintiff has not alleged notice in his complaint with regard to Counts II, III, or V.[2]  As will be discussed, Count II (false arrest) and Count III (false imprisonment) will be dismissed with prejudice, but Plaintiff will be allowed leave to amend Count V (IIED).

## A.   Count II - False Arrest

Plaintiff concedes that notice of this claim was untimely because his injury was complete as of the date of his arrest, November 12, 2002, and he did not provide notice until October 2003, more than 180 days after the injury.[3]  (Paper 7, at 2). Accordingly, Count II will be dismissed with prejudice.

## B.   Count III - False Imprisonment

Defendants argue that Plaintiff's notice is untimely for his false imprisonment claim, because the claim arises from Plaintiff's arrest, which occurred more than 180 days before notice was

---

[2] Nor has Plaintiff alleged notice with regard to Count IV, malicious prosecution, but Defendants do not move to dismiss that count.

[3] Defendants attach an exhibit to their motion to dismiss that includes a copy of Plaintiff's notice, indicating receipt of notice in October 2003.  While the court cannot look to this information to resolve the motion to dismiss, the court can use it to determine whether Plaintiff should be given leave to amend.  More importantly, Plaintiff does not dispute the date of notice. Although Plaintiff provides conflicting dates of notice in his opposition memorandum, first indicating that notice of his claims was received on October 9, 2003, and later indicating it was received October 3, 2003, he does not dispute that notice was received in October 2003, which still substantially exceeds the 180-day notice period for the false arrest claim.

received.  (Paper 6, at 2).  Plaintiff argues that, pursuant to the decision in *Heron*, the LGTCA does not require notice within 180 days of when the injury first occurs, but within 180 days after the injury has ceased.  (Paper 7, at 2).

The elements of false imprisonment, which are identical to the elements of false arrest, are: "(1) the deprivation of the liberty of another, (2) without consent; and (3) without legal justification."  *Heron*, 361 Md. at 264; *see also Manikhi v. Mass Transit Admin.*, 360 Md. 333, 365 (2000); *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995).  Thus, Plaintiff's cause of action for false imprisonment arose, "and his injuries for the purpose of the LGTCA therefore occurred, on . . . the date that he was arrested and detained by the police.  The facts alleged to support each element of his claim were in existence at that time."  *Heron*, 361 Md. at 265; *see also Gray v. Maryland*, 228 F.Supp.2d 628, 641 (D.Md. 2002) (applying Maryland law and holding that the plaintiff's cause of action for false imprisonment accrued on the date of the arrest because all of the facts required to support each element of the claim existed at that time).  Like his claim for false arrest, Plaintiff's injury for his false imprisonment claim took place on November 12, 2002.  On that date, he was deprived of his liberty, without his consent, and he alleges without legal justification.  Consequently, his notice to Defendants, received in October 2003, is untimely.

Plaintiff's argument that *Heron* does not compel a conclusion that the 180-day period begins on the date of arrest is unconvincing.  Plaintiff argues that the plaintiff in *Heron* only had been incarcerated for one day, and that, had he been incarcerated for a longer period of time, the Court of Appeals of Maryland would have ruled differently. (Paper 7, at 3).  Plaintiff asserts that the court in *Heron* cited to cases in other jurisdictions, and in doing so, implicitly supported the proposition that an injury for false imprisonment continues through the date of release, and that this release date triggers the period for notice under the LGTCA.  (Paper 7, at 4).

Plaintiff's argument ignores critical language within *Heron*, which makes clear that the notice period begins at the moment when the plaintiff can actually bring the claim.  The court does not make exceptions for later notice if the injury continues (i.e., if the plaintiff is held for longer than one day).  Once the "legally operative facts" come into existence, the 180-day period begins. Moreover, the court cites to cases in other jurisdictions not for the proposition that a cause of action accrues at release from prison, but to support its holding that the cause of action for false imprisonment does *not* accrue at the termination of criminal proceedings.  *Heron*, 361 Md. at 265-70.  Accordingly, Plaintiff's notification to Defendants, which Plaintiff acknowledges was

received in October 2003, is untimely, and Count III will be dismissed with prejudice.

**C.  Count V - Intentional Infliction of Emotional Distress**

As with the false imprisonment claim, Defendants argue that Plaintiff's claim of IIED arises from his arrest, therefore his October 2003 notice is untimely.  (Paper 6, at 2).  Plaintiff argues in his opposition memorandum that the "extreme and outrageous" acts underlying his claim relate not only to his arrest, but also to his subsequent imprisonment and the prosecution of his criminal case.  (Paper 7, at 4).  In their reply, Defendants assert that insofar as Plaintiff's claim relates to his arrest, notice is untimely.  Defendants also contend that once Plaintiff was indicted on January 30, 2003, Canales no longer had any authority over the criminal proceedings, and therefore cannot be responsible for any subsequent action related to those proceedings. (Paper 8, at 3-4).

The same requirements governing notice of Plaintiff's false arrest and false imprisonment claims are applicable to Plaintiff's claim of IIED.  Under § 5-304 of the LGTCA, Plaintiff had 180 days from the time of his injury to provide notice to Defendants.  An injury occurred when Plaintiff's cause of action arose, meaning "when the legally operative facts permitting the filing of his claims came into existence." *Heron*, 361 Md. at 264.  To establish a claim of IIED, a plaintiff must show four elements: "(1) The

8

conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) the emotional distress must be severe." *Manikhi*, 360 Md. at 367 (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)) (internal quotation marks omitted).

As currently pled, Plaintiff's claim appears to be based on his arrest. Plaintiff alleges that, "as part of the investigation of the murder of Malstrom, Canales and other officers of the County arrested Davis and charged Davis with murder and assault in the death of Malstrom without probable cause; and instituted and continued criminal proceedings against Davis without probable cause." (Paper 1, at 10). Plaintiff further states that "as a proximate result of Davis [sic] false arrest, Davis has been damaged."[4] (Paper 1, at 10).

Any claim of injury arising from his arrest cannot be maintained because Plaintiff's notice to Defendants was not timely under the LGTCA. As noted, in his opposition to Defendants' motion to dismiss, Plaintiff argues that his IIED claim does not arise solely from his arrest, but also stems from the continued criminal

---

[4] Although Plaintiff indicates in his complaint that he is filing claims of false arrest, false imprisonment, and malicious prosecution against *both* the County and Canales (paper 1, at 2), it is unclear from Plaintiff's complaint if the IIED claim is against both Defendants. In the claim, Plaintiff refers to the actions of Canales, but Plaintiff states that the County is liable for the resulting damage. (Paper 1, at 10-11).

9

proceedings against him.   Plaintiff does not clarify, however, which Defendant is responsible for these continued "proceedings." (Paper 7, at 4).   If Plaintiff wishes to amend his complaint with regard to Count V, for IIED arising from the continued criminal proceedings, Plaintiff must point to some decisive act that occurred within the 180 days prior to his notice to Defendants that would satisfy the elements of the cause of action.   Plaintiff cannot simply rely on the continuing effects of his November 12, 2002, arrest because, as already stated, notice for any injury relating to this incident is untimely.   Plaintiff also must make clear who is responsible for the conduct alleged in support of the IIED claim.   Accordingly, Count V of Plaintiff's complaint for intentional infliction of emotional distress will be dismissed without prejudice to amendment.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted.   Plaintiff will be granted an opportunity to file an amended complaint as to Count V for intentional infliction of emotional distress.   A separate Order will follow.


                    /s/
            _____
            DEBORAH K. CHASANOW
            United States District Judge